UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     *Plaintiff*, ) | |
| ) | |
|     *vs*. ) | 2:15-cr-00019-JMS-CMM |
| ) | |
| DONTA HENDERSON (05), JUSTIN SWAIN (06), ) | |
| and ROBERT L. MALONE (08), ) | |
|     *Defendants*. ) | |

## **ORDER**

The Second Superseding Indictment in this case charged Defendant Justin Swain with one count of conspiracy to distribute methamphetamine. [Filing No. 407.] The Court held a jury trial in this matter, which began on July 17, 2017 and ended on July 24, 2017. The jury reached a unanimous guilty verdict as to all defendants, including Defendant Justin Swain, on Count 1 for conspiracy to distribute methamphetamine, and the Court entered convictions consistent with that verdict. [Filing No. 519; Filing No. 520.] On July 28, 2017, Mr. Swain filed a Motion for a Judgment of Acquittal or Alternatively, For a New Trial. [Filing No. 528.] That motion is now ripe for the Court's decision.

In his motion, Mr. Swain argues that the evidence at trial was not sufficient to permit a reasonable jury to conclude beyond a reasonable doubt that he "knowingly and intentionally joined and participated in an agreement with one or more other individuals to commit an unlawful act," asserting instead that the evidence at most "established that he was merely a buyer and seller of controlled substances to which he bought drugs from James Western, and sold those drugs to unnamed parties…." [Filing No. 528 at 2.] Mr. Swain argues that the only evidence presented to the jury shows that he bought drugs on occasion from Mr. Western, that Shevockus Swing saw Mr. Western hand drugs to Mr. Swain once, and that even though Mr. Western contended he

1

fronted drugs to Mr. Swain, Mr. Swain contended that he paid for all drugs. [Filing No. 528 at 3-4.] Mr. Swain further contends that Mr. Western testified that he stored methamphetamine at Mr. Swain's home, but that he "kept his dealings with people in the network separate from Swain and specifically stated he did not introduce Swain to any of his suppliers other than [ ].[1] No other members of the inner circle identified Swain with drugs or money." [Filing No. 528 at 6-7.] Mr. Swain argues that Mr. Swing testified "there was a circle of people who had access to [Julius] Weldon" and "Justin Swain was not included within that circle." [Filing No. 528 at 7.] Mr. Swain argues that all of the firearms located in his home were in a locked safe, which was located in a separate room with a locked door, and that he never admitted to getting drugs fronted to him by Mr. Western, but only admitted that he bought and sold drugs. [Filing No. 528 at 7.] Mr. Swain argues that the transcripts of conversations entered into evidence only reflected conversations between Mr. Swain and Mr. Western, and not between Mr. Swain and any other individuals charged in the conspiracy. [Filing No. 528 at 8.] Finally, he asserts that "[w]hat is abundantly clear is that at no point in time did either Swain or Western show any other connection to the other party's business. When viewing both parties from a totality of the relationship it is clear that Swain bought and sold drugs from Western and had no particular connection to the Weldon organization." [Filing No. 528 at 9.]

The Government asks the Court to deny Mr. Swain's motion. [Filing No. 555.] It argues that either direct or circumstantial evidence can be used to establish that there was an agreement to distribute controlled substances. [Filing No. 55 at 2.] The Government then points to direct evidence from trial which it argues establishes that Mr. Swain entered into a conspiracy with Mr. Western to distribute controlled substances. [Filing No. 555 at 4.] It notes that Mr. Swain allowed

---

[1] This sentence in Mr. Swain's motion is incomplete.

Mr. Western to store drugs at Mr. Swain's house, which showed that his "role in the conspiracy encompassed more than just a buyer of methamphetamine…." [Filing No. 555 at 5.] The Government also points to circumstantial evidence from trial, including evidence that Mr. Western fronted methamphetamine to Mr. Swain for redistribution. [Filing No. 555 at 5-6.]

Federal Rule of Criminal Procedure 29 provides that a defendant may move for judgment of acquittal within 14 days after a guilty verdict or after the Court discharges the jury, whichever is later. It also provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal." Fed. R. Crim. Pro. 29(c). In sum, Rule 29 "permits a defendant to move for a judgment of acquittal even after a guilty verdict is entered if he does not believe the evidence is sufficient to sustain a conviction." *United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014). "When faced with a Rule 29 motion, a court asks 'whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The Court defers to the credibility determinations of the jury and overturns the verdict "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Torres-Chavez*, 744 F.3d at 993 (citing *United States v. Blassingame*, 197 F.3d 271, 284 (7th Cir. 1999)). Given the applicable standard, "[t]he movant faces a nearly insurmountable hurdle." *Torres-Chavez*, 744 F.3d at 993 (citation omitted).

The Court agrees with the Government that sufficient evidence was presented at trial for the jury to find Mr. Swain guilty of Count 1. In order to support a conviction for conspiracy, the Government must prove that: "(1) two or more people agreed to commit an unlawful act, and (2)

the defendant knowingly and intentionally joined in the agreement." *United States v. Thomas*, 845 F.3d 824, 830 (7th Cir. 2017) (citation and quotation omitted). In the context of a conspiracy to distribute drugs, the Seventh Circuit recently stated:

> Where…a drug distribution conspiracy is charged, the analysis is somewhat more complex. Because the sale of drugs is itself a substantive crime that necessarily involves multiple parties, the parties' agreement to complete that sale does not by itself also constitute a conspiracy…. Instead, to prove a distribution conspiracy, "the government must offer evidence establishing an agreement to distribute drugs that is distinct from evidence of the agreement to complete the underlying drug deals."… The parties' agreement to distribute may be (and often is) implicit, and the government can prove the existence of an agreement with either direct or circumstantial evidence….

*United States v. Maggard*, 865 F.3d 960, 975 (7th Cir. 2017).

The Court finds that the Government presented both direct and circumstantial evidence of Mr. Swain's involvement in a conspiracy to distribute methamphetamine. The direct evidence the jury heard included:

- Testimony from Mr. Western and phone calls between Mr. Swain and Mr. Western regarding Mr. Western receiving methamphetamine from other members of the conspiracy, and Mr. Swain then distributing the methamphetamine to his customers;

- Testimony from Mr. Western that Mr. Swain allowed him to store methamphetamine at Mr. Swain's house, even giving him a key to his house;

- Phone conversations between Mr. Swain and Mr. Western wherein Mr. Swain told Mr. Western that he had a customer waiting to purchase methamphetamine, or that he had just sold methamphetamine to a customer; and

- A phone conversation between Mr. Swain and Mr. Western wherein Mr. Swain agreed to bring methamphetamine to a person at Mr. Western's request.

The evidence here showed that Mr. Swain allowed Mr. Western to store methamphetamine at this house, that Mr. Swain obtained methamphetamine from Mr. Western, that Mr. Western knew what Mr. Swain was doing with the methamphetamine he provided to him (selling it to customers), and that Mr. Swain then sold it to his customers. This evidence directly showed that Mr. Swain was

4

involved in a conspiracy with Mr. Western to distribute methamphetamine. *See Maggard*, 865 F.3d at 976 (direct evidence of conspiracy to distribute methamphetamine included that defendant "collected money from his customers, exchanged it with [the co-conspirator] for a predetermined amount of methamphetamine, and then distributed that methamphetamine to the customers"); *United States v. Lechuga*, 994 F.2d 346, 350 (7th Cir. 1993) (finding a conspiracy existed, and stating "Pagan had a customer…for a particular amount of drugs, and he wanted Lechuga to supply him with the necessary amount. This is hardly consistent with Lechuga's being a spot seller unaware what activities Pagan, or any subsequent occupier of a place in the chain of distribution, might undertake. Lechuga knew precisely what Pagan was going to do with the drugs he sold him").

As for circumstantial evidence, the Seventh Circuit has instructed that "[t]he fronting of large quantities of drugs, combined with evidence of repeated transactions and a prolonged relationship between the purported members of the conspiracy, supports an inference that there was an agreement to distribute [methamphetamine], distinct from any underlying buy-sell relationship." *United States v. Villasenor*, 664 F.3d 673, 680 (7th Cir. 2011). Here, the jury heard testimony from Mr. Western that he received methamphetamine from Julius Weldon which he then stored at Mr. Swain's residence and that he fronted much of that methamphetamine to Mr. Swain for distribution. The jury heard an intercepted telephone conversation wherein Mr. Western and Mr. Swain discussed Mr. Swain anticipating receiving payment and being able to pay off his debt to Mr. Western. The jury also heard evidence regarding Mr. Swain's repeated purchases of methamphetamine from Mr. Swain, and purchases of large quantities, which constitutes additional circumstantial evidence of a conspiracy. *Id.*

5

In sum, the Court finds that viewing the evidence in the light most favorable to the Government, a rational trier of fact could have found beyond a reasonable doubt that Mr. Swain was guilty of conspiracy to distribute methamphetamine. Accordingly, Mr. Swain's Motion for a Judgment of Acquittal or Alternatively, For a New Trial, [Filing No. 528], is **DENIED**.

Date: 10/2/2017

*signature*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**